## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

———————————

№ 22-CV-91 (PKC) (RER)

———————————

RACHEL WOLFF

versus

CAMP GAN ISRAEL NORTHEAST, INC., EVENTS BY SHMUEL, INC.
AND REUVEN GLASSMAN a/k/a/ SHMUEL GLASSMAN

———————————

**REPORT & RECOMMENDATION**

May 30, 2023

———————————

TO THE HONORABLE PAMELA K. CHEN
UNITED STATES DISTRICT JUDGE

**RAMON E. REYES, JR., U.S.M.J.:**

Rachel Wolff ("Plaintiff") brought this diversity action to recover damages for injuries she sustained while riding a pedal cart that Events by Shmuel, Inc. ("Events by Shmuel") and Reuven Glassman a/k/a Shmuel Glassman ("Glassman") had leased to Camp Gan Israel Northeast, Inc. d/b/a Camp Gan Israel ("Camp Gan"). (ECF No. 10 ("Am. Compl.")). Plaintiff moved for default judgment against Events by Shmuel and Glassman (together, the "Defaulting Defendants") (ECF No. 47 ("Second Mot. For Default J.")), which Your Honor has referred to me for a Report and Recommendation. (ECF Order dated 11/18/2022). After carefully reviewing the record and for the reasons set forth herein, I respectfully recommend that the Motion be denied and that Plaintiff be

1

ordered to show cause in writing within fourteen days why the Amended Complaint should not be dismissed as to Defaulting Defendants.[1]

## BACKGROUND

I. Factual Allegations

Plaintiff is a citizen of Florida. (Am. Compl. ¶¶ 1, 6). Camp Gan is a citizen of either New York, where it conducts business operations, or Pennsylvania, where it operates a camp. (*Id.* ¶ 7). At all relevant times, Camp Gan owned and operated the recreational campground in Pennsylvania where Plaintiff was a resident camper. (*Id.* ¶¶ 13–14). It was at this camp where Plaintiff was allegedly injured as a minor child. (*Id.* ¶¶ 11, 14). Glassman and Events by Shmuel are, respectively, an individual and corporate citizen of New York, with the same residence and business address in Brooklyn. (*Id.* ¶¶ 3–4, 8–9). At all relevant times, Defaulting Defendants were "engaged in the business of selling, leasing, renting, or otherwise letting for hire non-motorized pedal karts." (*Id.* ¶ 15).

On an unspecified date and through unspecified means, Camp Gan acquired a pedal kart from Defaulting Defendants. (*Id.* ¶ 17). Then, on or about August 20, 2019, Plaintiff alleges that she "suffered severe and permanent injuries, *to wit*, an anterior cruciate ligament [("ACL")] tear in her right knee and a tibial plateau fracture" (*id.* ¶ 18) while operating a pedal kart with "inadequate or no supervision and/or training . . . [and] over terrain which was unsafe for that operation and despite having no experience doing so" (*id.* ¶ 17). Plaintiff contends that Defaulting Defendants'

---

[1] Joanna Lamberta, a second-year student at Brooklyn Law School and an intern in my Chambers, provided substantial assistance in researching and drafting this Report and Recommendation.

negligent "acts and omissions" with respect to Plaintiff and intended users[2] were the "direct and proximate" cause of Plaintiff's "severe, painful, and permanent injuries." (*Id.* ¶¶ 32, 34).

II.    Procedural History

Plaintiff commenced this action on January 6, 2022 (ECF No. 1) and amended her Complaint on January 19, 2022. (Am. Compl.). After Plaintiff struggled to serve Defaulting Defendants (*see* ECF Nos. 13–16), I authorized service by publication.[3] (Order dated 4/25/2022; *see also* ECF No. 33). Following Plaintiff's compliance with the Court-ordered service requirements (ECF Nos. 36–39), Defaulting Defendants still failed to appear or otherwise answer the Amended Complaint. Plaintiff then requested a certificate of default on July 21, 2022 (ECF No. 40), which the Clerk of the Court entered shortly thereafter (ECF No. 41). Subsequently, Plaintiff moved for default judgment against Defaulting Defendants (ECF No. 43), and Your Honor referred that motion to me for a report and recommendation (Order dated 8/15/2022). I respectfully recommended that

---

[2] These alleged "acts and omissions" include: (a) "Entrusting users, including Plaintiff, with non-motorized pedal karts when it knew or should have known that the users lacked sufficient experience, training, instruction, and knowledge to operate them safely;" (b) "Failing to provide training and instruction to users to ensure that they would properly and safely operate the karts;" (c) "Entrusting users, including Plaintiff, with non-motorized pedal karts when it knew or should have known that Plaintiff was physically unable to completely control or otherwise safely operate same;" (d) "Entrusting users, including Plaintiff, with non-motorized pedal karts without first confirming that the terrain upon which they would be operated was safe, appropriate, and not unreasonably dangerous;" (e) "Failing to provide direction to [Camp Gan] of the need to adequately instruct users to ensure proper and safe operation of the karts;" (f) "Failing to provide books, documents, videos, or other instructive materials to [Camp Gan] to assist in instruction, or to provide those materials to users directly;" (g) "Negligently supervising users, including Plaintiff, while operated a non-motorized pedal karts;" (h) "Failing to ensure that the use of the karts was properly supervised by others, including employees, agents, and/ or servants of [Camp Gan];" (i) "Failing to draft, devise, or ensure the existence of an adequate plan to ensure that the karts were used in a safe and orderly manner;" (j) "Failing to properly train and/ or instruct its agents, employees, and/ or servants charged with the task of supervising and monitoring the resident campers, including Plaintiff, in the subject activity;" (k) "Failing to employ agents, employees, and/ or servants, or failing to employ those individuals in sufficient quantity, to ensure that resident campers, including Plaintiff, were properly supervised and monitored;" and (l) "Failing to properly monitor, maintain, and/ or make reasonable inspections of the premises for the purpose of ensuring that it was safe for resident campers, including Plaintiff, to operate non-motorized pedal karts." (Am. Compl. ¶ 32).

[3] Camp Gan was properly served on February 2, 2022 (ECF No. 12), and has since filed an Answer and Cross Claim against Defaulting Defendants (ECF No. 20). Thus, Plaintiff does not currently seek default judgment against Camp Gan.

Your Honor deny that motion for failure to comply with Local Civil Rules 7.1 and 55.2(b). (ECF No. 44). Plaintiff ultimately withdrew that motion in anticipation of re-filing a motion that complied with all Local Rules. (*See* ECF No. 45; ECF Orders dated 10/28/2022). The Court now considers Plaintiff's Second Motion for Default Judgment against Defaulting Defendants, which is supported by an attorney affidavit, memorandum of law, and certificate of service. (ECF Nos. 47-1–47-3).

**LEGAL STANDARDS**

I.       Default Judgment

Federal Rule of Civil Procedure 55 requires "a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the plaintiff must request entry of default by the clerk of the court. *Id.* (citing Fed. R. Civ. P. 55(a)). The clerk must enter the party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Second, once default has been entered against the non-responsive parties, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Where procedural requirements have been satisfied, the defaulting party is deemed to have admitted all well-pleaded factual allegations in the complaint and a court must accept plaintiff's allegations as true. *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). However, "[a] party is not entitled to a default judgment as a matter of right simply because its adversary fails to answer or otherwise respond to a complaint." *Falls Lake Nat'l Ins. Co. v. DNA Plumbing Contractors, Inc.*, No. 20-CV-2798 (RJD) (RER), 2021 WL 3518279, at *3 (E.D.N.Y. May 4, 2021) (quotation omitted), *adopted by* 2021 WL 2702571 (July 1, 2021).

When considering a motion for default judgment, the court need not accept the plaintiff's legal conclusions. *Miss Jones LLC v. McCormick*, No. 16-CV-7129 (WFK) (RER), 2017 WL 4877437, at *2 (E.D.N.Y. Aug. 9, 2017), *adopted by* 2017 WL 4898278 (Oct. 27, 2017). Further, a default does not "excuse any defects in the plaintiff's pleading." *Hernandez v. Delta Deli Mkt. Inc.*, No. 18-CV-00375 (ARR) (RER), 2019 WL 643735, at *2 (E.D.N.Y. Feb. 12, 2019) (citing *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 n.17 (2d Cir. 2015)). Conversely, it is the court's responsibility to determine if well-pleaded facts establish a "proper basis" for the defendants' liability as a matter of law. *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977 (NGG) (RER), 2017 WL 3491964, at *1, (E.D.N.Y. July 19, 2017) (citations omitted), *adopted by* 2017 WL 3493136 (Aug. 14, 2017). The complaint must therefore allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (citation omitted).

II.     Choice of Law

A federal court in New York will apply the New York choice of law rules when exercising diversity jurisdiction. *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998) (citing *Guar. Trust Co. v. York*, 326 U.S. 99, 108–09 (1945); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 485, 496 (1941)). Under New York law, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Matter of Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936, 937 (N.Y. 1993). An "actual conflict" between the laws of two states will arise where there are "relevant substantive differences

5

that could have a significant impact on the outcome of the case." *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332 (2d Cir. 2005).

There is an actual conflict between laws in New York and Pennsylvania concerning negligence, with New York "adopt[ing] the pure comparative fault doctrine meaning that 'a plaintiff who is [ninety-nine percent] at fault could still recover [one percent] of damages'" and Pennsylvania "us[ing] a modified comparative negligence rule pursuant to which plaintiffs are barred from recovery of any damages if they are found to be more than [fifty percent] at fault for their injuries." *Ladenheim v. Starr Transit Co., Inc.*, 242 F. Supp. 3d 395, 404–05 (E.D. Pa. 2017) (citations omitted); *compare* N.Y.C.P.L.R. § 1411 (pure comparative fault) *with* 42 Pa.C.S.A. § 7102 (modified comparative fault); *see also Manzone v. Wal-Mart Stores, Inc.*, 602 F. Supp. 3d 415, 420 n.4 (E.D.N.Y. 2022) ("[U]nder New York choice of law rules, the law governing negligence in New York and Pennsylvania differ.").

When New York's interest analysis is applied in tort cases in which "the domiciles of the parties differ, the location of the injury determines the governing substantive law absent special circumstances." *Gray v. Busch Ent. Corp.*, 886 F.2d 14, 15 (2d Cir. 1989) (citing *Bader by Bader v. Purdom*, 841 F.2d 38, 40 (2d Cir. 1988)); *see Manzone*, 602 F. Supp. 3d at 420 n.4 ("the site of the [injury] has the greater interest in applying its law to an accident within its borders"); *Rochford v. Woodloch Pines, Inc.*, 824 F. Supp. 2d 343, 349 (E.D.N.Y. 2011) ("New York courts apply the law of the place where the tort occurred with regard to 'conduct regulating' rules, including the duty of care." (citing *Lee v. Bankers Trust,* 166 F.3d 540, 545 (2d Cir. 1999)). Accordingly, because there is an actual conflict between New York and Pennsylvania law with respect to negligence, and the injury occurred in Pennsylvania, this action is governed by Pennsylvania law.

**DISCUSSION**

I respectfully recommend denying Plaintiff's Motion for Default Judgment for inadequate compliance with Local Civil Rule 7.1, and for failure to plead sufficient facts to establish a cause of action for negligence.

I.      Plaintiff's Memorandum of Law Does Not Comply with Local Civil Rule 7.1

In support of this Motion, Plaintiff submitted a deficient memorandum of law thereby failing to satisfy Local Rule 7.1. This Rule requires that all motion papers contain, *inter alia*, "a memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined." Loc. Civ. R. 7.1(a)(2). Although courts are not required to deny a motion for failure to comply with Local Rule 7.1, this procedural violation may warrant a denial, especially when accompanied by other shortcomings. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *2 n.4 (E.D.N.Y. Sept. 1, 2015), *adopted by* 2015 WL 5561180 (Sept. 21, 2015); *see Pompey v. 23 Morgan II, LLC*, No. 16-CV-2065 (ARR) (PK), 2017 WL 1102772, at *3 (E.D.N.Y. Feb. 13, 2017) (denying a motion for default judgment in part for submitting a memorandum of law that cited only two cases and did not discuss liability); *Lewis v. FMC Corp.*, No. 04-CV-331S, 2008 WL 4500185, at *1 (W.D.N.Y. Sept. 30, 2008) (finding that a "[six]-page memorandum of law violate[d] the spirit of Local Rule 7.1[] because it contain[ed] no meaningful factual or legal argument").

Plaintiff's memorandum of law addresses default judgment under Federal Rule 55, but is devoid of cases or authorities pertaining to her negligence claims, and lacks headings or arguments pertaining to specific issues related to Defaulting Defendants' liability. The memorandum is also silent as to the conflict of law issues arising from this Court's diversity jurisdiction. Thus, it falls

7

short of Local Rule 7.1 requirements, and, together with the pleading deficiencies detailed below, supports denial of this Motion.

II.   Allegations that Defaulting Defendants Were Negligent Are Not Well-Pleaded

"To prevail on a claim for negligence in Pennsylvania, a plaintiff must establish: (1) a duty recognized by law requiring the actor to conform to a certain standard of conduct; (2) failure by the actor to observe this standard; (3) causation between the conduct and injury; and (4) actual damages." *Ins. Co. of Greater New York v. Cobb*, No. 11-CV-1877, 2012 WL 2526986, at *2 (M.D. Pa. June 29, 2012) (citing *Tomko v. Marks*, 602 A.2d 890, 892 (Pa. Super. Ct. 1992)). Here, Plaintiff failed to allege properly that Defaulting Defendants owed her a duty, or that Defaulting Defendants' alleged conduct caused her injury.

A. Duty

Plaintiff asserts that, "[a]s a business engaged in the sale, leasing, renting, or letting by hire of non-powered pedal karts, [Defaulting Defendants] had a duty to the intended users of those karts[.]" (Am. Compl. ¶ 31). Plaintiff alleges that this duty required Defaulting Defendants "to use ordinary care in the performance of that activity, to train and instruct the intended users of the karts and/or to ensure that they were sufficiently skilled and experienced in doing so, and to ensure that activities undertaken with those karts were done safely and without physically endangering riders." (*Id.*). Although the Court accepts that Defaulting Defendants have a duty to exercise the ordinary care of a reasonable pedal kart supplier under similar circumstances, the Court disagrees that this entails any affirmative duty to train or instruct intended users of the karts, ensure intended users are skilled, or ensure that the karts are operated in any particular manner. In so alleging, Plaintiff

8

actually argues that the Defaulting Defendants owe here a heightened duty of care, one that does not appear in Pennsylvania law.

In Pennsylvania, whether a duty exists "is a question of law for the court to decide." *Bourgeois v. Snow Time, Inc.*, 242 A.3d 637, 657 (Pa. 2020) (quoting *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005)). "[W]hether the defendant owed a duty of care to the plaintiff is the primary question in a negligence suit." *Shellenberger v. Kreider Farms*, 288 A.3d 898, 906 (Pa. Super. Ct. 2023) (quotation omitted), *reargument denied* (Mar. 13, 2023). Indeed, "'[i]f the law does not impose a duty on defendants to act under a certain set of circumstances, a claim for negligence will not survive.'" *Morello v. Kenco Toyota Lift*, 142 F. Supp. 3d 378, 382 (E.D. Pa. 2015) (quoting *Karpf v. Mass. Mut. Life Ins. Co.*, No. 10-CV-1401, 2014 WL 1259605, at *7 (E.D. Pa. Mar. 27, 2014)). A duty is "predicated on the relationship existing between the parties at the relevant time," *Morena v. S. Hills Health Sys.*, 462 A.2d 680, 684 (Pa. 1983), and "may arise from common law, statute, or contract." *Morello*, 142 F. Supp. 3d at 382 (citations omitted).

Plaintiff has failed to plead that any relationship exists between her and Defaulting Defendants that warrants imposition of the heightened duty of care she suggests.[4] Although in certain circumstances, suppliers of chattel owe a heightened duty of care to intended users, that duty applies only to suppliers of dangerous chattel. *See Lockett v. Gen. Elec. Co.*, 376 F. Supp. 1201, 1212 (E.D. Pa. 1974) (concluding that in the absence of dangerous or defective chattel, a retailer "had a legitimate right to rely on [the party that first acquired the chattel] to protect [third parties]

---

[4] Pennsylvania courts recognize that special relationships may justify imposing a heightened duty under certain negligence theories. *See, e.g.*, *Shellenberger*, 288 A.3d at 908–09 (discussing heightened duty of care owed by employers to employees, and by landowners to business invitees); *Toney v. Chester Cnty. Hosp.*, 36 A.3d 83, 95 (Pa. 2011) ("limit[ing] the reach of [a negligent infliction of emotional distress] claim to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach"); *Emerich v. Phila. Ctr. for Hum. Dev., Inc.*, 720 A.2d 1032, 1037 (Pa. 1998) (recognizing that a "mental health professional has a duty to warn a third party of potential harm by [their] patient").

9

from harm and had no duty to anticipate that [the party that first acquired the chattel] would [allow it to be used or operated] so as to present a dangerous condition"), *aff'd sub nom. Gen. Elec. Co. v. Sun Shipbuilding & Drydock Co.*, 511 F.2d 1393 (3d Cir. 1975), and *aff'd,* 511 F.2d 1394 (3d Cir. 1975); *see generally* Restatement (Second) of Torts §§ 388–93, 399–402, 405–08 (1965) (imposing a duty on a supplier when chattel is, or is likely to be, dangerous). Further, "[w]here there is no proof of a dangerous instrumentality, and no proof of a defect or improper design making an otherwise harmless instrument dangerous, of which defendant retailer knew or should have known, it follows that the retailer has no duty to warn of product-connected dangers." *Lockett*, 376 F. Supp. at 1211; *see Ellis v. Chicago Bridge & Iron Co.*, 545 A.2d 906, 908 (Pa. Super. Ct. 1988) ("In failure to warn or instruct cases, recovery is sought on the theory that the product is 'unreasonably dangerous' when unaccompanied by a warning with respect to nonobvious dangers inherent in the use of the product."). Here, Plaintiff has not plead any facts to support a finding that the kart she operated was itself dangerous, unsafe for its intended use, or otherwise defective. Therefore, Defaulting Defendants' role as a supplier of non-dangerous, non-defective pedal karts does not suffice as the basis for the Court to impose a heightened duty of care.

Plaintiff has likewise neglected to put forth, and the Court has not found, any statute, contract, or case law to support imposing a duty on individuals or businesses engaged in the sale, leasing, renting, or letting of non-motorized recreational vehicles.[5] "The Supreme Court of Pennsylvania

---

[5] In the absence of pertinent Pennsylvania caselaw, the Court is guided by caselaw from other jurisdictions where courts have refrained from imposing a heightened duty of care on suppliers of recreational vehicles. *See, e.g.*, *Dominique v. Mashantucket Pequot Gaming Enter.*, No. 16-CV-134, 2019 WL 2219798, at *2 (Mash. Pequot Tribal Ct. May 1, 2019) (declining to impose an elevated standard of care on a vendor that supplied scooters to a casino when a casino patron was injured by a scooter and sought to hold supplier liable for, *inter alia*, failure to instruct the intended user of the scooter); *Weaver v. Celebration Station Props., Inc.*, No. 14-CV-2233, 2015 WL 1932030, at *5 (S.D. Tex. Apr. 28, 2015) (finding "no duty to warn . . . of the open and obvious dangers of go-kart driving"); *Hassett v. Cape Cod Bicycle Tours, Inc.*, No. 87-CV-16, 1987 WL 17540, at *1 (D. Mass. Sept. 3, 1987) (finding that when a bicycle tour company "did not agree to ensure plaintiff's safety" they had no duty to do so).

10

has cautioned courts that they should not 'enter into the creation of new common law duties lightly[.]'" *Jean v. Bucknell Univ.*, 534 F. Supp. 3d 404, 412 (M.D. Pa. 2021) (quoting *Feleccia v. Lackawanna Coll.*, 215 A.3d 3, 13 (Pa. 2019)). Accordingly, when plaintiffs seek the imposition of new affirmative duties, courts "require concrete and substantial justification." *Seebold v. Prison Health Servs., Inc.*, 57 A.3d 1232, 1246 (Pa. 2012). Plaintiff has failed to provide such justification.

In sum, this Court is unaware of any Pennsylvania statute or case law that would impose on the lessor of non-defective, non-dangerous chattel the duty to train and instruct the intended users of the chattel, to ensure that those users were sufficiently skilled and experienced to use the chattel, or to ensure that activities undertaken with the chattel were done safely and without physically endangering those users. Absent such controlling precedent, the Court cannot find that Plaintiff has adequately pleaded a negligence claim against the Defaulting Defendants. *See Hill v. Ofalt*, 85 A.3d 540, 550 (Pa. Super. Ct. 2014) (finding no duty when no legal argument or binding case law is provided to explain why a duty is owed); *Morello*, 142 F. Supp. 3d at 384 (declining to impose a duty when plaintiff cannot cite and court cannot identify "any authority under Pennsylvania law to impose a duty on a seller to 'educate and inform'" intended users).

B. <u>Causation</u>

"Causation under Pennsylvania law requires the existence of two separate components: cause-in-fact and proximate cause." *Heeter v. Honeywell Int'l, Inc.*, 195 F. Supp. 3d 753, 757 (E.D. Pa. 2016) (citing *Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1103 (Pa. 2012)), *aff'd by* 706 F. App'x 63 (3d Cir. 2017). "Cause in fact or 'but for' causation requires proof that the harmful result would not have come about but for the conduct of the defendant. Proximate cause, in addition, requires proof that the defendant's conduct was a substantial contributing factor in bringing about the harm alleged." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 366–67 (3d Cir. 1990). Conclusory

allegations without facts to support a plausible inference that the defendant's conduct directly caused or was a substantial contributing factor in the plaintiff's injury are not well-pleaded. *See McNeil v. Wells Fargo Bank, N.A.*, No. 20-CV-6319, 2021 WL 632640, at *5 (E.D. Pa. Feb. 18, 2021) (finding that plaintiff's unsupported belief about causation did not allow the court "to infer a plausible nexus" between defendant's alleged conduct and plaintiff's injury); *Javaid v. Weiss*, No. 11-CV-1084, 2011 WL 6339838, at *10 (M.D. Pa. Dec. 19, 2011) (finding that "a conjectural assertion is insufficient to plead . . . proximate cause"). Thus, conclusory allegations do not suffice to establish causation. *See Zuzel v. SEPTA*, No. 19-CV-268, 2019 WL 1584598, at *4 (E.D. Pa. Apr. 11, 2019) (finding allegations that a "breach was 'a direct, proximate and factual cause and substantial factor' in [plaintiff's] alleged injury" merely recite the elements of negligence and therefore do not satisfy pleading requirements).

Even if Defaulting Defendants owed to Plaintiff the heightened duty she suggests, the Amended Complaint falls short of establishing that their acts or omissions were either the cause-in-fact or proximate cause of her injuries. Although Plaintiff alleges that her injury occurred while operating one of the Defaulting Defendants' pedal karts at Camp Gan (Am. Compl. ¶¶ 17–18), Plaintiff does not describe when or how the injury occurred, nor does she assert any fact to support an inference that had any of Defaulting Defendants' acts or omissions transpired differently, her injuries would have been prevented. Moreover, she offers no facts to support her conclusion that the conduct of Defaulting Defendants was the proximate cause of or a substantial contributing factor in her injury. (*See id.* ¶¶ 30, 32). Plaintiff does not specify what the trainings, instructions, or warnings that Defaulting Defendants had an alleged duty to perform should have contained, nor does she explain how their absence contributed to Plaintiff's injury. Her conclusory allegation that their negligent conduct makes Defaulting Defendants "solely and wholly at fault" (*id.* ¶ 33), does

12


Case 1:22-cv-00091-PKC-JAM   Document 48   Filed 05/30/23   Page 13 of 14 PageID #: 229

not suffice for the Court to find this inference plausible, particularly when Plaintiff indicates that the terrain on which campers operated the karts was unsafe (*id.* ¶¶ 16–17), and that Camp Gan employees likewise failed to supervise, train, and instruct campers while they operated the karts (*id.* ¶ 23). *See Heeter*, 195 F. Supp. 3d at 759 (citation omitted) (finding no proximate cause when, *inter alia*, "it [was] 'abundantly clear' that factors other than Defendants' alleged negligence . . . had a substantially greater impact on the events leading to [the injury]"). Accordingly, Plaintiff has not established that Defaulting Defendants' allegedly negligent conduct caused her injury.

## **CONCLUSION**

Based on the foregoing reasons, I respectfully recommend that Plaintiff's Second Motion for Default Judgment be denied and that Plaintiff be ordered to show cause in writing within fourteen (14) days why the Amended Complaint should not be dismissed as to Defaulting Defendants, with citations to statutes, cases, or otherwise that establishes the duty of a lessor in this context to provide the types of training, supervision, and guidance Plaintiff suggests was required to satisfy the heightened duty of care.

Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defaulting Defendants by regular and certified mail and to file proof of service with the Clerk of the Court within seven (7) days. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Pamela K. Chen, within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).


**RESPECTFULLY RECOMMENDED.**

**/s/ Ramon E. Reyes, Jr.**
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: May 22, 2023
 Brooklyn, New York